FILED

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(Ocala Division)

2018 AUG 30 PM 3: 18

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

BRANDI SONES )
    Plaintiff, )
)
) **Case No.:** 5:18-cv-459-OC-30PRL
)
)
)
GREYSTONE HEALTHCARE ) **Jury Requested**
MANAGEMENT CORPORATION, )
    Defendant. )
_____ )

## COMPLAINT

**COMES NOW**, Plaintiff Brandi Sones (hereinafter "Plaintiff" or "Ms. Sones"), by and through her undersigned counsel, and files this, her Complaint against Defendant Greystone Healthcare Management Corporation (hereinafter "Defendant" or "Greystone"), and respectfully shows this Court as follows:

### NATURE OF COMPLAINT

1. Plaintiff brings this action to obtain full and complete relief and to redress the unlawful employment practices described herein.

2. This action seeks declaratory relief, liquidated and actual damages for Defendant's unlawful employment practices on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 42 USC §§ 2000e, et seq. (hereinafter "Title VII").

### JURISDICTION AND VENUE

3. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983 and 42 U.S.C. § 2000e-5(f); Plaintiff also invokes this Court's pendant jurisdiction to hear Plaintiff's state law claims.

4. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights); 28 U.S.C. § 1367 provides supplemental jurisdiction over the state law tort claims that arose from the same common nuclei of facts.

5. The unlawful employment practices alleged in this Complaint were committed within this District in the State of Florida. Therefore, in accordance with 28 U.S.C. § 1391 and 42 U.S.C. §2000(e)-5(f), venue is appropriate in this Court.

## PARTIES

6. Plaintiff is a female citizen of the United States of America and is subject to the jurisdiction of this Court.

7. Defendant Greystone Health is the parent company of The Lodge Health and Rehabilitation, is qualified and licensed to do business in Florida, and at all times material hereto has conducted business within this District.

## ADMINISTRATIVE PROCEDURES

8. On June 6, 2017, Plaintiff timely contacted the United States Equal Employment Opportunity Commission ("EEOC") and filed a complaint against The Lodge alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et. seq.*, and the Rehabilitation Act, identified as EEOC Charge No. 511-2016-027772.

9. Plaintiff has exhausted all of her administrative remedies.

2

10. On or about June 6, 2017, Plaintiff submitted a Form 5 Charge to the EEOC alleging that The Lodge had violated Title VII of the Civil Rights Act of 1964, as amended, due to discrimination based upon gender (female), sexual harassment, and retaliation for filing a complaint of sexual harassment, a protected activity.

11. The EEOC issued a "Notice of Right to Sue" on May 31, 2018, entitling an action to be commenced within ninety (90) days of receipt of that notice.

12. This action has been commenced within ninety (90) days of Ms. Sones' receipt of the "Notice of Right to Sue."

## FACTUAL ALLEGATIONS

13. Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

14. Plaintiff was hired by Defendant in March 2016 as a as a Nurse.

15. In this capacity, Ms. Sones worked closely with other Nurses, specifically Mark Harmon, and was required to communicate with him to fulfill the duties and responsibilities of her job.

16. At all times relevant, Kayla Fenton acted in supervisory capacity to Plaintiff.

### Sexual Advances and Harassment By Co-Worker

17. On or around August 1, 2016, Mark Harmon a co-worker of Ms. Sones, was assigned to be a '3-11' Nurse, meaning that he and Ms. Sones would be working closely together.

18.   Ms. Sones gave him multiple reports throughout the day and each time he placed his hands on Ms. Sones' knee, back and shoulder. Ms. Sones immediately recoiled and asked him to stop.

19.   Prior to this incident, Ms. Sones told him on multiple previous occasions told him to not touch her and to please keep his hands to himself.

20.   Mr. Harmon would continuously make sexually-charged remarks to Ms. Sones while they served on the same shift. For example, as Ms. Sones and Mr. Harmon did narcotics counts instead of saying the number "six", he would instead say "ooh sex".

21.   On another occasion, Ms. Sones was attempting to explain to a resident the need to replace a g-tube. The g-tube had a tear that required it to be taped. The g-tube had not been torn the previous day and upon hearing of the tube's condition, Mr. Harmon then gestured with his fingers in and out and was raising his eyebrows saying "yeah it was torn up because of me". Mr. Harmon kept referring to his fingers and making signals with his hands by moving his index finger into a circle made by his other hand simulating a sexual act.

22.   On yet another occasion, Mr. Harmon stood at the cart next to Ms. Sones and grabbed her on her right side and started patting her on the upper chest/breast area, shoulders, neck, and back. While doing this, Mr. Harmon made sexual noises. Immediately, Ms. Sones pulled away from Mr. Harmon and told him to stop. This time, a unit charge nurse was there to witness his behavior. Although the nurse was in close proximity, she denied witnessing the event. Ms. Sones asked the charge nurse to tell Mr. Harmon to stop and that she did not appreciate him putting his hands on me nor his comments." She never addressed the incident with Mr. Harmon.

4

23. On or around August 4, 2016, Ms. Sones and Mr. Harmon were working a shift together. As Plaintiff finished taking a resident's vitals Mr. Harmon came in and started speaking to her in a sexual tone while making sexual innuendos. He then brushed across her arm and grabbed her breast. As she had done many times before, Plaintiff pushed away from Mr. Harmon this time inadvertently hitting him with the vitals machine.

24. On or around August 9, 2016, Plaintiff attempted to give her report to Mr. Harmon. While giving her report Mr. Harmon continued his unwanted touching by grabbing Plaintiff on her upper arm and shoulder area. When Ms. Sones told him to stop, he laughed. At this juncture, Plaintiff decided to contact the Director of Nursing, Tiffany Hafer, to report the harassment. Plaintiff informed Ms. Hafer of Mr. Harmon's inappropriate, unwanted touching and comments that Mr. Harmon had made. Ms. Sones also informed her that she had reported his behavior to the Unit Charge Nurse the previous week to no avail. Plaintiff told Ms. Fenton that she just wanted it to stop. Ms. Hafer responded that she would "handle it."

25. After the complaint to the Director of Nursing, Mr. Harmon's behavior towards Plaintiff became more aggressive. Mr. Harmon started to make condensing remarks about Plaintiff and her allegations. In one conversation with another employee after Plaintiff's complaint, Mr. Harmon made the remark "Oh no don't talk about touching! People will report you for things like that won't they". Plaintiff was within earshot of this conversation and it became apparent that Mr. Harmon was upset about her complaint and that the confidentiality of her complaint had been compromised.

26. On or around August 11, 2016, after another hostile exchange with Mr. Harmon, Plaintiff went to the Director of Nursing to complain about hostile treatment on behalf of Mr. Harmon and to request to not be scheduled with him.

27. The next day, on or around August 12, 2016, Plaintiff was told that she was going to have to relieve Mr. Harmon despite explaining to the Unit Charge Nurse that she was uncomfortable doing so.

28. On or around August 17, 2016, Mr. Harmon came in to relieve Plaintiff, as she was in the midst of speaking to a family member of a patient. Plaintiff engaged Mr. Harmon into the conversation as she was handing off to him the issues we were currently discussing. During the conversation, Mr. Harmon repeatedly was placing his hands on her back and arms and shoulders. Plaintiff asked him to stop and walked away.

29. On or around August 18, 2016, Mr. Harmon came in to relive Plaintiff and again started by making sexual jokes. Plaintiff responded "I am not in the mood for your crap, just stop". Plaintiff then went to the medical cart and said "come count the narcs". Mr. Harmon placed his hand on Plaintiff's shoulder and Plaintiff immediately stated "stop touching me" and moved away. She then started the narcotics count. As they were counting, Mr. Harmon started to make moaning and other sexual noises throughout. Again, he then started to make sexual jokes. The Unit Charge Nurse, Kayla Fenton, was present during this interaction. The entire time she laughed and told him how funny he was, which intensified Mr. Harmon's behavior. Plaintiff eventually hurried to finish her report and left for the day.

30. On or around August 23, 2016, Plaintiff came in to work and found was a consent form with a drawing of breasts on the front of the form. It was revealed by Ms. Fenton that Mr. Harmon left the form and made the drawing. As Plaintiff was giving Mr. Harmon the report for the day he made continuous sexual remarks and sexual sounds. Plaintiff told him "I refuse to deal with you today, I am doing this report fast if you are too busy acting like that and miss something that is your own fault".

31. On the same day, Plaintiff made a complaint regarding the severe and pervasive treatment she had received from Mr. Harmon. In response to her complaint, Ms. Sones was met with victim blaming by Human Resources for "allowing the situation to have continued for a month" before reporting it to the Defendant's 'Care Line'.

32. On or around August 24, 2016, the following day after the complaint, Plaintiff was instructed to go into the medical room to speak with the Director of Nursing, Ms. Hafer insinuated that Plaintiff's complaint had caused trouble for the Defendant's human resources department. She stated that her "feelings are hurt because we are in trouble with corporate. They think we didn't do anything to stop this."

33. On or around August 25, 2016, Defendant terminated Mr. Harmon.

**Retaliation**

34. On or around August 30, 2016, Plaintiff came to work to find out she had been moved to a different hall. She struggled throughout the day as she did not have a relationship with her new co-workers and she was given little to no direction. Plaintiff believed the move and subsequent lack of guidance was retaliation for her complaint.

35. On or around August 31, 2016, Plaintiff discovered that she was being issued a verbal warning.

36. On or around September 17, 2016, Plaintiff discovered the Unit Charge Nurse, Kayla Fenton, was openly discussing Plaintiff's complaint and disparaging her to other co-workers. Ms. Fenton had announced that "she was not supposed to talk about what was going on with Brandi", she had informed several employees she was "deliberately being a Bitch to Brandi", "Brandi never does her work, and should be concentrating on that instead of making up

lies", "none of what Brandi was trying to get her into trouble for was true", "Brandi was chasing her around texting her and calling her trying to be friends with her", "Brandi accused Mark of sexual harassment", "Brandi got Mark fired with lies" and one of the last I will list but not the least she had stated "I made Brandi leave, I was sick of her excuses why she can never do her job".

37. On or around September 17, 2016, Defendant ended Plaintiff's employment in conjunction with a workers compensation settlement agreement.

## COUNT ONE
Sexual Harassment
42 U.S.C. § 2000e-2(a)(1)
*(Hostile Work Environment)*

38. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

39. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

40. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

41. At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the state of Florida within the meaning of 42 U.S.C. § 1983.

42. Plaintiff is a member of a protected class, as she is a female.

43. Defendant discriminated against Plaintiff because of her gender in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by engaging in, tolerating or failing to prevent the gender

based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

44. During Plaintiff's employment, Mr. Mark Harmon subjected Plaintiff to a barrage of offensive and unwelcome comments and touching. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be offensive and/or undesirable.

45. This conduct and other incidents of harassment described above were because of Plaintiff's gender.

46. The conduct suffered by Plaintiff was sufficiently pervasive and/or severe to alter and did alter a condition of Plaintiff's employment and created an abusive working environment.

47. Plaintiff was detrimentally affected by the conduct and such conduct would have detrimentally affected a reasonable woman in Plaintiff's position.

48. The Defendant knew or should have known of the harassment described herein and Mr. Harmon's propensity to engage in such gender-based harassment and failed to implement prompt, appropriate or corrective action.

49. The harassment directed at Plaintiff was either intended to cause her severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to the conduct of Defendant.

50. Due to Defendant's actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

51. Plaintiff has incurred lost wages and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

## COUNT TWO
Gender Discrimination
42 U.S.C. § 2000e-2(a)(1)
*(Female)*

52. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

53. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

54. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

55. At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the state of Florida within the meaning of 42 U.S.C. § 1983.

56. Plaintiff is a member of a protected class, as she is a female.

57. Defendant discriminated against Plaintiff because of her gender in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by engaging in, tolerating or failing to prevent the gender based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

58. During Plaintiff's employment, Mr. Harmon, subjected Plaintiff to a barrage of offensive and unwelcome comments. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be offensive and/or undesirable.

59. This conduct and other incidents of harassment described above were because of Plaintiff's gender, and Plaintiff did not see Mr. Harmon or others harass the male employees in the manner she was being harassed.

60. The harassment directed at Plaintiff was either intended to cause her severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to the conduct of Defendant.

61. Due to Defendant's actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

62. Plaintiff has incurred lost wages and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

## COUNT THREE
Retaliation Based Upon Protected Activity
42 U.S.C. § 2000e-2(a)(1)
*(Reprisal)*

63. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

64. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

65. At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the state of Florida within the meaning of 42 U.S.C. § 1983.

66. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

67. Plaintiff complained verbally and in writing to Defendant's management and officials regarding her belief that she was being subjected to sexual harassment and discriminatory conduct.

68. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her participation and opposition to unlawful and discriminatory employment practices in violation of Title VII, Section 1983.

69. The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

70. Similarly situated employees (no known prior EEO activity) were not subjected to the same, similar, or any other adverse treatment.

71. Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

72. Defendant's unlawful conduct has created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect upon other employees' willingness to engage in protected activity.

73. Defendant's unlawful conduct negatively impacted the terms, conditions, and privileges of Plaintiff's employment.

74. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation and opposition to Defendant's discriminatory conduct.

75. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *respondeat superior*.

76. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

77. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering.

78. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Order the Defendant to reassign Plaintiff to a new position with new first-line supervision;

b. Order the Defendant institute a policy and procedure to be implemented against discrimination;

c. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

d. Supervisory training for the supervisors at issue herein; and

e. Award compensatory damages in excess of Two Hundred Thousand Dollars ($200,000.00);

f. Award medical costs and expenses incurred as a result of Defendant's unlawful conduct;

g. Award lost wages;

h. Award back pay and benefits, with interest;

i. Award future wages;

j. Award reasonable attorney fees, costs, and expenses incurred for this action;

k. Award equitable, declaratory, and injunctive relief; and

l. Award such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

79. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

Dated: August 28, 2018

/s/ Erica G. Burns
Erica G. Burns, Esq. (Bar No. # 0119860)
THE MOSAIC LAW FIRM PLLC
618 E. South Street, Suite 500
Orlando, FL  32806
(407) 675-3249
erica.burns@themosaiclawfirm.com

*Counsel for Plaintiff*